Good morning, Your Honor. My name is Michael Murphy, and I'm the attorney for Plaintiff Appellant in this action, and I'm pleased to also introduce my associate, Michael Murphy, Jr., who's also worked extensively with me on this case. I think there's a resemblance. There is a resemblance. This is an appeal from the Court's ruling and judgment, granting the defendant's motion for summary judgment. Our action was commenced in the Los Angeles Superior Court as a FIA case, and the case was transferred to the federal court by virtue of the fact that we had diversity in the case, and that fact is stipulated, too. And our claim has always been based on FIA, and on that basis, we proceeded with our case. It's our position that our client gave proper and appropriate notice of her disability. She followed the procedures that were set forth in the company's policy manual, not only when she had her cancer surgery, but when she came back, she notified her interim manager, she notified her direct manager, and she notified the human resources manager that she still had cancer. She showed the human resources manager the scar on her neck, and she said that she was going to need ongoing and future radiation therapy. Was she disabled at that point? Was she disabled then? She was disabled at that point under the Jensen case. Under the Jensen case, as a matter of law, if you have cancer, you're considered to be disabled under FIA, and you're entitled to leave for medical treatments and surgeries. But she's only going to leave if she's scheduled sometime in the future some additional therapy. Radiation, was it? She had to have radiation. But she didn't know when or how, when that would take place? No, but she gave them notice, and the law requires that she give them notice, not only through their manual, but also the law, and that the employer and her work together to schedule the time subject to whatever the request is. It assumes it's specific enough to trigger the interactive process, correct? Right. And you're telling us that it was specific enough to trigger the interactive process? Yes, it was. Because? Because she gave them notice that she required future ongoing medical treatment, that she still had cancer, and that she was going to be required to have this radiation iodine therapy. So what are they supposed to do at that point if she says, I'm back, or even I'm going to have future treatment? What exactly is their obligation at that point? At that point, the employer had notice of her condition and had an obligation to have an interactive meeting with her. What was her condition? Pardon? She had had the surgery. It was successful. She was 100%. She was back to work without restriction. So as I get it, really it's that I may need some radiation at some point in the future, but I'm not sure when and where. No, she said she definitely had to have the radiation therapy treatment. It wasn't May. She had to. Why wasn't the ball in her court to let the employer know more specifically what she needed, counsel? Based on my interpretation of California law, once the employer had noticed that she required this future ongoing medical treatment with the radiation iodine therapy, they had a duty to meet and confer with her and set up a time for when she could go have the surgery subject to whatever medical requirements she had. How does Soraya help your case, if at all? Pardon? Soraya versus Univision Radio? How does that help your case, if at all? I believe it does by virtue of the fact that in that case the employee said that they were not absolutely certain of the exact date when they were coming in and when they were going to be required to have the surgery and that it was going to be in the near future, but they met and conferred with the employer, and that's what we did here. Their manual also only requires that we give them notice, and their manual requires that they work with us. There's an employee manual in the record, and I believe it can be found at ER 508 and 5- let me tell you where it is. The manual is located at- hang on, I'm sorry. You've got plenty of time. The manual is located at ER 251-252, and that manual says that when you have a medical condition where you believe you need to work with the company for accommodations, that you get together with the HR manager. That's what the manual says, and that's what she did. She got together with the HR manager, notified her that she was going to require this medical treatment in the future, and that she needed to have time to take away from work to go have the treatment. So she complied with her internal rules, too. There were two individuals, Villaluz and Mack, that made the decision to terminate, correct? Yes, but we also believe that Ms. Murray was also involved in that process. Well, believing it is one thing, but what did the district court find? Well, we provided evidence she was involved. Ms. Murray assisted Mr. Villaluz. He gave her notice that he was terminating her. She assisted in preparing the script that he was to use to terminate her. She attended the meeting when our client was terminated. She was involved in that process. Well, supplying support is not quite the same as influencing the decision maker. Well, she affected the decisions of the decision maker by virtue of the fact that under the manual, as the human resources manager, she was given notice of our client's condition and the need to have future medical and ongoing medical treatment for her cancer. And by virtue of the fact that she was the one that the employee was going to work with and the HR person under the manual was working with her and the company, the knowledge that Ms. Murray had would be imputed to the company under the law that we cite in our brief. And in addition, by virtue of the fact that the company assigned her the responsibility to act as their representative or agent between the employee and the company, she also had a duty to disclose the information to the decision makers. And the decision makers are saying, well, if we had known that she had this disability, we would have accommodated her. Counsel, can I ask you, forgive me for interrupting, but so right there, you're not contesting that the decision makers, we don't have evidence that the decision makers knew, right? We believe that Ms. Murray was one of the decision makers because she was involved in the process. And because she was involved in the decision making process, that she was either a decision maker or she was one that was there that had an obligation to influence that decision. And that's based on just the fact that she supplied certain assistance, is that correct? Well, based on her management. Forms, script, et cetera. Well, and based on her management function and also what she's required to do under the policy manual. She doesn't make decisions to terminate, though, counsel. No, but she supplies the information. The decision is made via Luz and Mac. But she's involved in the decision making process. Is that because, as an intermediary, you think she had a duty to disclose this information? Yes. And what information was she supposed to disclose? She would disclose to them the medical condition of our client and her request for an accommodation. Right, and so this kind of goes back, I think, to Judge Shays, where we started. The medical condition was I've had this very serious diagnosis, I've had the surgery, I'm back, I'm 100%, and I'm going to need some treatment. My cancer is metastasized, and I'm required to have radiation iodine treatment, and I'm going to need to take time off from work to have that treatment because I'm not cancer-free. She was not cancer-free when she came back. The doctor's note released her to come back to work, so there was nothing that impaired her ability to work. It did not say that she was cancer-free. And she gave oral notice to everybody in the management line that she was required to that she was not cancer-free. And all she said was, I feel good. I feel 100%. She did say that when she came back. But you're saying that doesn't negate the fact that she still had cancer. She still had cancer, and she still needed medical treatment. And under the Jensen case, when you have cancer and you need medical treatment, one of the accommodations is to allow you time off from work to get your medical treatment. Was it ever the case that the need for future treatment was more than an assertion that at some point I will need future treatment? Did she ever say, here's the schedule, or even that it started, or it's going to start next month or in three months? Well, the evidence that we put in the record show that she had the cancer treatment in December, the same month that she was terminated. Right, but I'm trying to figure out who knew that. And it's just not clear to me. I don't see that in the record. She didn't have an exact date when she was going to have to be required to have the treatment, but she notified them. She was definitely going to have to have that treatment. But did she say, even if it wasn't an exact date, did she say soon, next month, anything like that? I believe the record shows that she notified them it was coming up soon and that she was going, it was imminent, and it was something very, very serious. Well, we seem to be focusing on this point, so I'm going to let you reserve your time. And when you come back, if you've got your record sites for that point, at least for my notes, that would be very helpful. Okay. Okay. Thank you, counsel. Good morning. May it please the Court. My name is Reed Schaefer, appearing on behalf of Appaloose in this matter. I want to start, frankly, with what the panel has been asking about, which relates to the knowledge or the need for future treatment. I think what is clear here in the record is that there was no information provided by the appellant as to when this was going to occur. So to suggest that there was some failure of process is just not supported by any facts in the record. What is in the record is a very receptive conversation when she did provide this information both to Ms. Murray and to her direct supervisor, Ms. Giles. The response was, glad you're back, basically. Understand this is, you're going to need more treatment. When you know what's going to happen, it's going to be fine. If you need time off, it's fine. To suggest that there was a failure of an interactive process is stretching both the law and what happened here. The interactive dialogue that needed to occur here was, when do you need it? Answer, I don't know. Question, well, comment. When you do know, let us know. It will be fine. Which is entirely consistent with prior situations where the appellant requested time off for surgery, for doctor's appointments. There's absolutely no information, no evidence in the record that at any time she was denied any treatment that she ever needed. Any time for a doctor visit, any time off for surgery, for recovery. And when she came back and said, I'm going to need more treatment, the answer is, don't worry about it. How do you distinguish Soraya or should you distinguish Soraya? Well, I think because there was no current need, there was no failure of accommodation, I don't really need to. But as your Honor has at least suggested, there was information provided in Soraya that I want to have this process next month. I want to have this surgery next month. The other distinguishing feature, I believe, is that she actually said, I need it now in December. And they said, no, somebody else already has scheduled leave and so you can't have it. And there is no evidence in our case that there was any problem with whenever she wanted to schedule this appointment or in the future, whether it was next month, next year, whenever. But there is an intervening, superseding event, which is her position is eliminated. Opposing counsel's argument right there seems to be that the intermediary had an obligation to tell the decision makers that this ongoing medical condition was at issue. There is no support for that in either the policies that are cited by appellant or in the law. What, frankly, the argument is, is that the medical condition is information that should be shared with basically everyone. The plaintiff appellant here is arguing that there should be a conclusive presumption that once an HR person knows that an employee, any employee, presumably, has a disability or a medical condition, that information should be shared with the manager of the organization and anyone else that might have anything to do with making decisions about that individual. Well, the follow-up on that, the counsel suggests there's a manual that has an obligation in that regard. He cited the manual. There's no language in the manual to that extent. The only thing, there is a policy that certainly says if you need an accommodation, you speak to exactly who she spoke to, and they will deal with it. The question is what does the manager, a senior manager, is not involved in determining should this, what accommodation is needed in this situation, until he may or may not, depending on what the accommodation is. Well, what's in the record about what Murray did in her interactions with Villaloo's and Mack? I think this is a critical feature, a critical point, because what's in the, well, what's in the record is that she didn't say anything. What's in the record is she received notice from Villaloo's by e-mail that a decision had been made to terminate the plaintiff. The plaintiff's argument is at that point, the business manager, the HR representative should have said, wait, this person has a medical condition that you weren't previously aware of. That is turning the purpose behind the discrimination law on its head. What you have here is uncontroverted evidence that the people who made a decision to eliminate the position were not aware of either the disability or medical condition of this individual or of any need for accommodation. Well, counsel, as I read the record, there were e-mails between Murray and Villaloo's establishing that they spoke about terminating your client. I mean, Perez, not your client. Why are these e-mails sufficient to impute Murray's knowledge to Villaloo's? The only e-mail in the record, Your Honor, is an e-mail from Mr. Villaloo's to Ms. Murray, who is essentially the HR person responsible for carrying out the administrative tasks around the termination. It is not, Ms. Murray, what do you think of this decision? It's not how should we proceed. It is a providing her with information that the decision has already been made. There were no e-mails between them before that time, is that right? No. Thank you. No. There's no contention that there was, that Ms. Murray's opinion or guidance was sought or necessary for the decision that was made. There just is nothing there. And the result of this plaintiff's argument here is understandable. The timeline is quite clear that at the time the decision was made to eliminate the position that resulted in the plaintiff's termination, the people who made that decision were not aware of either a medical condition or a need for accommodation. There's no evidence of that whatsoever. That is a critical, critical prima facie case requirement, because the assertion of both of the major causes of action here are you made a decision to terminate based on disability. Well, if there's no connection between disability, knowledge of disability, and the decision, you don't make that prima facie case. And I would suggest that that's the fundamental challenge that a plaintiff cannot overcome in this matter. Thank you. If there are other questions, I think that really takes care of, frankly, the entire case. We don't make it over. There is no evidence, additional evidence, that would suggest discriminatory animus by anyone. In order to make the cat's paw type argument that the plaintiff has now asserted, they're suggesting that silence by Ms. Murray shows animus, or that her... I don't know. He's suggesting that she had a duty to inform the decision makers. That's what I heard him say pretty clearly. In terms of the imputed knowledge theory, yes. But I would suggest that if the question is actual knowledge, that is that the people made a decision... There's a difference between the imputed knowledge concept and a cat's paw kind of theory. In the imputed knowledge, I would suggest that in making a prima facie case that the decision makers knew about the disability or any reasonable accommodation issues when they made the decision, that knowledge can't be imputed. It has to be actual. I'm not sure even if it could be imputed. That's my puzzle about this case. I'm sorry? Well, I said I'm not sure there's anything to impute. If there's an iterative process, an interactive process, it seems to me your theory is we initiated that. We had that conversation. Her request notice that future treatment might be needed was received without any hostility and that the ball was in her court to let her supervisor or the intermediary know that she might need when and if. And that didn't happen. There was prior to the point... That's the question. And that didn't happen. It did not happen. Yeah. Right. Prior to the point that the termination decision, the position elimination decision was made. Right. So that's why I'm saying I'm not sure what there is to even impute. I agree. The intermediary didn't have knowledge that there was an appointment scheduled next week or next month. I agree. Again, the nature of the conversation that took place was fine, when you do know, let us know. There's nothing else to convey to anyone else. There's no input that was needed by senior management in terms of how we were to deal with this thing. I have a timeline here that we struggled to nail down exactly when the decision was made. There is that argument, yes. I don't think it is material to the resolution of the case. My question is, what's the best evidence of the day on which the decision was made? The best evidence is the e-mail to Ms. Murray saying, please execute on this. Please get the information necessary to effectuate the termination. That was the last step in the analysis, though, of the position. Wasn't there earlier discussion about whether it was economically sound to have this position, et cetera? I was responding to the question of when it was. I don't know when the decision was. I was extending it beyond that. Is there evidence in the record, in fact, that there had been discussion or analysis of the economic viability of this position and the income of the location? There is evidence in the record to the extent that the discussions took place in the fourth quarter of 2015 as to how they were going to deal with a declining and unsustainable census of patients and what the best way to deal with it was. And is there anything in the post-termination conduct of the company that supports that the decision was pretextual? I would assert absolutely not. There has been no change in the employment status or the positions of employment. There has been no individual who has been hired to perform those duties. Nothing has changed since the, I think to the chagrin of the employer, nothing has changed in terms of either the financial considerations or the status of employment there. Anything further, counsel? Are there any questions further otherwise? I don't think so. Thank you very much for your argument. I wanted first to address the decision-maker issue. There's nothing in the case law that says that that rule is ironclad, and in all cases, if the decision-makers don't have actual knowledge, that the company avoids liability for discrimination. The case law says you analyze the facts of the case and you look at how the companies are set up and how they operate, and you take that into consideration. What we're dealing with here is a really big company with layers of management structure, and they have rules and procedures they ask their employees to follow and comply with. I appreciate that, counsel. Forgive me for interrupting. I appreciate that, but it's just really important that we get this, because I'm trying to figure out where is your evidence of discrimination? The evidence of discrimination is that, contrary to what counsel said, there is no financial evidence that's in the record anywhere that they had a financial justification for eliminating the position. So your answer is, forgive me, but is your answer then that it's circumstantial evidence of discriminatory intent? There is evidence of discrimination by virtue of the fact they placed all these ads, including advertising our client's position. Okay, let me just try this again. Then they were telling her. Counsel, counsel, counsel, so my question was? I'm apologizing. Not at all, but I want to make sure I understand your argument. Is your argument that you're relying on circumstantial evidence? Yes. Okay, and the circumstantial evidence is the ads? Well, I think that's maybe considered direct evidence, but it could be circumstantial. It could be classified as either. We have all the advertising. They did not provide in the record any financial justification to show an undue hardship. Are you talking about elimination of the position, or are you talking about? For eliminating the position, and they did not provide any evidence to show that they were suffering undue hardship if they had to accommodate her. Okay. And we also have Ms. Murray not disclosing anything to them about the plaintiff's medical condition and not interacting with her. Excuse me, counsel. When you go back to that, I think the gist of the question was, are you telling me that in the record the deposition evidence that you took depositions, and you deposed, you know, I'm referring to Ann Marks. You're telling me they didn't, in fact, elaborate on why they did what they did? There is no evidence. Did they elaborate on that in the deposition? No, they did not. So you didn't ask them that question? I went into that, but it's not in the record. No. There's a difference between what they said and whether they gave you documents showing a profit line problem. They did not provide any evidence. I'll tell you this, it's not in the record, but with that qualifier, when I deposed them, they gave us financial statements that did not show any material differences between before she worked there, when she worked there, and after. That would show there was a need or a justification. So the district court just didn't understand that? I think that's the case. But that evidence is not in the record. But anyways, there were these ads placed. Ms. Murray didn't tell the decision makers when she should have. She didn't interact with our client. She kept it secret. That's inconsistent with the policy manual. And, by the way, I wanted to mention one thing, and I know I'm almost done. When you have a policy manual that has a procedure, you waive all the notice requirements that would otherwise have been mandated by FMLA, and also that would have been mandated even by FEHA. And FEHA doesn't really have notice requirements. And that's 29 CFR 825.304E. And that regulation stands for the proposition. If you have a manual and that's your procedure, you waive all of these other notice requirements that you might otherwise be able to assert as a defense. Well, the California Code requires that there be provided anticipated timing and duration of the leave. Isn't that right? Yeah, as soon as practicable. But also there's also a provision that requires the employer in the interim to work with the employee. And one duty is not contingent on the other. To work with what? What was there to work with here? What was the employer supposed to work with? The employer was supposed to work with her and find out how much time she thought she needed, work with her and her doctor to set a date, let her know what dates they thought would be okay for her to take the time off. Well, and she said she didn't know it would be some time in the future. She didn't know the exact date. She notified them she definitely needed the time. But the employer in the interim under the code and case law is required to work with her and obtain that information, and they did not. And they're to also work with her in scheduling it with her doctor. They're a part of the date selection process under the regs that apply to this case. And they didn't comply with that. They just completely ignored it. The regs required they respond within five days after she told them she needed an accommodation. They didn't comply with that reg. They didn't respond at all. They just let her go. Any other questions? I don't think so. Thank you, counsel. Thank you both for your arguments. Very helpful. We'll take that matter under advisement.
judges: D.W. Nelson, Christen, Shea